UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KENNETH YOUNG | Case No. 2:22-CR-20 JD |

**OPINION AND ORDER**

The defendant, Kenneth Young, is charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Mr. Young has filed a series of pretrial motions consolidated in one document. (DE 60.) Among these motions is a request to dismiss his charge as unconstitutional in light of the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*. 597 U.S. 1 (2022). The motion is fully briefed and ripe for adjudication. For the sake of convenience the Court will only address the *Bruen* motion in this order and resolve the other pending motions in a separate order. For the following reasons this motion will be denied.

**A. Legal Standard**

A defendant can move before trial to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B). A defendant can make such a motion on the basis that the charged offense is based on an unconstitutional statute. *United States v. Posey*, 655 F.Supp.3d 762, 766 (N.D. Ind. 2023) (internal citations omitted). A constitutional challenge to a statute can be brought either as a facial challenge, or an as-applied challenge. Mr. Young brings both a facial and an as-applied challenge. To succeed on a facial challenge, the moving party must show that the statute is unconstitutional in all applications. *City of L.A. v. Patel*, 576 U.S. 409, 415, 418

(2015). To succeed on an as-applied challenge, the moving party must show it is unconstitutional because of the way it was applied to the particular facts of their case. *See United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

**B. Discussion**

This Court has previously considered and rejected a challenge to the constitutionality of § 922(g)(1) based on *Bruen*, and it sees no reason to revisit that conclusion in this motion. *United States v. Rice*, No. 3:22-CR-36, 2023 WL 2560836 (N.D. Ind. Mar. 17, 2023).[1] In *Rice*, this Court found that § 922(g)(1) satisfies the *Bruen* test and withstood both facial and as-applied challenges. *Id.* That is, the Court found that the regulation codified at § 922(g)(1) is consistent with the history and tradition of firearm regulation in the United States.[2] *Id.* This conclusion is shared by the overwhelming majority of federal courts to review this question, including a thus far unanimous consensus among the Judges of this District who have confronted the question. *See, e.g.*, *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023) (upholding § 922(g)(1) as constitutional); *Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023) (finding *Bruen* did not abrogate 10th Circuit precedent upholding the constitutionality of § 922(g)(1) under the Second Amendment as applied to both violent and non-violent felons); *United States v. Clark*, No. 1:20-CR-49, 2023 WL 2346284 (N.D. Ind. 2023) (Brady, C.J.); *United States v. Tribble*, No. 2:22-CR-85, 2023 WL 2455978 (N.D. Ind. Mar. 10, 2023) (Simon, J.).

---

[1] Like Mr. Young, Mr. Rice's underlying felony was a putatively non-violent crime and his as-applied challenged argued § 922(g)(1) is unconstitutional as-applied to persons convicted of non-violent felonies.

[2] In the interest of brevity the Court will not restate the full analysis or the *Bruen* standard here, and incorporates by reference the analysis and holding of *Rice*.

Mr. Young asks the Court to reconsider *Rice* in light of several subsequent cases, claiming that the legal landscape has "dramatically changed" since the Court issued *Rice*. (DE 68 at 24.) This case list includes *Range v. Attorney General*, from the Third Circuit, *Atkinson v. Garland*, from this Circuit, and a pair of district court cases from the Northern District of Illinois, *United States v. Prince* and *United States v. Griffin*. *Range v. Attorney General*, 69 F.4th 96, 106 (3d Cir. 2023) (en banc) (striking down § 922(g)(1) as-applied to the defendant who had previously been convicted of welfare fraud); *Atkinson v. Garland*, 70 F.4th 1018 (7th Cir. 2023) (not reaching the merits of the *Bruen* challenge to § 922(g)(1) but remanding for further fact finding); *United States v. Prince*, No. 1:22-CR-240, 2023 WL 7220127 (N.D. Ill. Nov. 2, 2023) (Gettelman, J.) (striking down § 922(g)(1) as facially unconstitutional) ; *United States v. Griffin*, No. 1:21-CR-693, 2023 WL 8281564 (N.D. Ill. Nov. 30, 2023) (Coleman, J.) (rejecting a facial challenge to the constitutionality of § 922(g)(1) but finding it unconstitutional as-applied to the defendant).

Save for *Griffin*, none of this is news to the Court. On three occasions since *Rice* was decided, this Court has been asked to reconsider the holding in light of intervening caselaw. After reviewing the legal developments and considering the reasoning of its sister courts, this Court declined to change course and will decline again today. *United States v. Sherls*, No. 2:22-CR-13, 2023 WL 8185665 (N.D. Ind. Nov. 27, 2023) (reaffirming *Rice* in light of *Prince*); *United States v. Keosackdy*, No. 3:22-CR-78, 2023 WL 6805893 (N.D. Ind. Oct. 16, 2023) (reaffirming *Rice* in light of the Seventh Circuit's decision in *Atkinson*); *United States v. Wade*, No. 3:22-CR-3, 2023 WL 6037404 (N.D. Ind. Sept. 15, 2023) (reaffirming *Rice* after considering the Third Circuit's en banc decision in *Range*). The Court will not belabor the point by fully

3

restating its prior analysis today and instead incorporates by reference its prior decisions on this question.

The Court will only make two further notes on this topic. First, a brief discussion of *Griffin* and then a few points about a novel argument raised in Mr. Young's brief.

Regarding *Griffin*, the Court notes that this decision rejected the facial challenge to § 922(g)(1) and thus can only support Mr. Young's as-applied challenge. 2023 WL 8281564, at *7-8. *Griffin* found that § 922(g)(1) was unconstitutional as-applied to Mr. Griffin based on the conclusion that while the history and tradition of firearms regulation in the United States supported the disarmament of "dangerous" individuals, there was also a requirement for an individualized assessment of whether a given defendant was "dangerous." *Id.* at *8–9.[3]

The Court respectfully disagrees with this conclusion for two reasons. First, the Seventh Circuit in *Atkinson* noted there has yet to be a showing of historical support for the conclusion that individual assessments of dangerousness are required. 70 F.4th at 1023 ("although Atkinson has shown some support for the idea that a group's 'dangerousness' is what mattered to the Founders, he does not provide much historical basis for individualized assessments or for delineating between individuals who committed violent versus non-violent crimes.") In fact, as this Court and others have previously noted, the historical record shows strong support for the ability to categorically prohibit a defined group from possessing arms based on the legislature's

---

[3] The Court would note that Mr. Young refers to a determination whether his prior felony was "violent" as the key inquiry in determining if he can be disarmed. However, the idea that only violent persons might be disarmed is an underinclusive misstatement of the history and tradition of the United States which, at the minimum, allows for disarming persons who would pose a threat to public safety if allowed to possess firearms. "History is consistent with common sense: it demonstrates that legislatures have the power to prohibit *dangerous* people from possessing guns." *Posey*, 655 F.Supp.3d 762, 774 (quoting *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J. dissenting) (other citations omitted) (emphasis added)). A criminal history laden with violent felonies certainly suggests that an individual is dangerous, but that does not mean a person can only be considered dangerous if they commit a violent felony. The decisions by sister courts, cited later in this order, on the dangerousness of interplay between firearms and drug trafficking illustrate this point well.

assessment the group was dangerous or untrustworthy, without individual dangerousness assessments of group members. *Jackson*, 69 F.4th at 504 ("history demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons"); *Posey*, 655 F.Supp.3d at 774–75 (collecting cases).

Second, *Griffin*'s claimed historical support for this requirement is the fact that some loyalists to the British Crown were allowed to possess arms after signing oaths of loyalty to the new American republic despite a general prohibition on Crown loyalists possessing arms. 2023 WL 8281564, at *8. *Griffin* concluded this exception necessarily "requires an individualized assessment to determine if a former loyalist is [dangerous]." *Id.* But the fact a person can be removed from a category, when they no longer meet the definition of that category, does not mean they were removed via an individualized assessment.

The Court views this example as follows: what feature defines the category of loyalists to the British Crown (and makes them dangerous to a newfound republic)? It is the person's professed loyalty to a hostile foreign sovereign. So when do persons stop being a part of this category? When they renounce their loyalty to that sovereign and pledge it to the new republic, via the act of a few pen strokes on an oath document. In the Court's view, this mechanism seems much more akin to a gubernatorial or presidential pardon for a felon. Pardons remove an individual from the category of felons at the stroke of a pen, but do not inherently require any individualized assessment the person is no longer dangerous.[4] Consequently, the Court finds that it cannot agree with its sister court that this particular episode of history supports the conclusion that the history and tradition requires individualized assessments of dangerousness.

---

[4] The Court recognizes that as a practical matter, pardons are usually only granted after thoughtful vetting. But at least as it relates to the President of the United States, the pardon power is largely discretionary and can be deployed wantonly with minimal due diligence.

Even if the Court agreed with *Griffin* on this point, an as-applied challenge would likely be unavailing to Mr. Young. One of Mr. Young's prior felonies was possession of a controlled substance, to wit: marijuana, with intent to deliver.[5] (DE 68 at 1.) Several sister courts, including several applying *Range's* holding, have held prior convictions for controlled substance trafficking are dangerous crimes which would withstand as-applied challenges to § 922(g)(1). *United States v. Ieliot Jackson*, No. 1:21-CR-175, 2023 WL 8601498, *13 (N.D. Ill. Dec. 12, 2023) (holding, in the alternative, the defendant would fail on an as-applied challenge to § 922(g)(1) given he had prior felony convictions for the dangerous offense of controlled substance trafficking) (collecting cases)); *United States v. Wright*, No. 23-CR-336, 2023 WL 8237250, *6–7 (E.D. Pa. Nov. 27, 2023) (concluding § 922(g)(1) is constitutional as applied to felony drug traffickers under the standard articulated in Range); *United States v. Cooper*, No. 23-CR-004, 2023 WL 8186074, *5–6 (D. Del. Nov. 27, 2023) (same). Consequently, neither *Griffin* nor an as-applied challenge based on his personal criminal history offer Mr. Young any prospect of relief.

The Court would also briefly address an argument raised by Mr. Young in his brief which challenges some analysis from *Rice*.[6] In *Rice* the Court noted that the Supreme Court's most expansive phrasing of the Second Amendment's coverage referred to "all members of the political community." 2023 WL 2560836, at *7 (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 580 (2008)). The Court consequently considered the historical tradition of excluding felons from voting or serving on juries, which are some core rights associated with being a member of a

---

[5] Despite marijuana's legalization for recreational use in several states, it remains a controlled substance under federal law.

[6] Based on the Court's prior analysis in *Rice* and its follow-on cases, there is no further need to discuss other issues raised in Mr. Young's brief about whether certain historical traditions related to treatment of felons, such as estate forfeiture or capital punishment, are sufficiently analogous.

political community. *Id.* (internal citations omitted). The Court noted that if the Founding era governments excluded felons from these core privileges afforded to members of the political community without offending the Constitution, it stood to reason that similar restrictions on their right to bear arms were also constitutional. *Id.* Put more bluntly, "[a]s a matter of basic reasoning it is hard to reconcile how the Framers of the Constitution could conclude that felons could not be trusted to wield pens in voting booths or jury rooms, but they simultaneously found them capable of wielding arms in the public square." *Id.* (internal citation omitted).

Mr. Young argues *Rice* erred in considering these historical traditions because voting is not a right, rather it is a *privilege*.[7] Similarly, jury service is not a right, it is a *duty*. (DE 68 at 6–7.) Thus, his argument goes, these activities are not proper analogues for determining the scope of the Second Amendment *right*.

Without getting bogged down in the details of this argument, these word games miss the forest for the trees. Knowing who was allowed to participate in core activities associated with membership in a political community is probative to determining who was considered a member of the political community.[8] Thus, it can also help to define the contours of other rights associated with being a member of the political community. This is particularly important when the Supreme Court has, in its most expansive restatement of the Second Amendment right, described it as applying to members of the political community.[9] At no point does Mr. Young

---

[7] This statement is manifestly incorrect. "It is *undeniable* that the right to vote is a *fundamental* right guaranteed by the Constitution." *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1061 (7th Cir. 2020) (citing *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)) (emphasis added).

[8] Again, the same information also helps inform how the rights of a member of the political community might be impaired or suspended. *See Rice*, 2023 WL 2560836 at *8.

[9] The Court would note it still is unsure about whether such a sweep is the actual intent of the Supreme Court given their subsequent reliance on the phrase "law-abiding citizens" in defining the right in *Heller* and *Bruen*. *See Posey*, 655 F.Supp.3d at 771 n.5. In any case, the Court need not decide the question today as even if Mr. Young

7

suggest that voting and jury service are not to be considered core activities associated with membership in a political community, or that there is a flaw in the Court's chain of reasoning. Therefore, the Court's conclusion on this point in *Rice*, shared by several sister courts, remains undisturbed.

### C. Conclusion

Accordingly, the motion to dismiss the indictment on the basis of the Second Amendment is DENIED. (DE 60.)

SO ORDERED.

ENTERED: December 15, 2023

                                                   /s/ JON E. DEGUILIO
                                                   Judge
                                                   United States District Court

---

and his activity were protected by the Second Amendment, the government's regulation would be consistent with history and tradition.