1UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA

v.                                              Case No. 2:22-CR-20 JD

KENNETH YOUNG

## OPINION AND ORDER

Defendant Kenneth Young is charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He had previously filed in a single document two motions to dismiss the Indictment, a motion to suppress, and a series of motions in limine. (DE 60.) The Court disposed of the motions to dismiss and the motions in limine, but took under advisement Mr. Young's motion to suppress. (Op. & Order, DE 70 & 77.) The Court ordered the parties to provide additional briefing regarding the latter motion and held an evidentiary hearing on May 1, 2024. Having reviewed the supplemental briefs and the evidence presented at the hearing, the Court will deny Mr. Young's motion to suppress.

### A.  Factual Background

Having considered evidence presented at the hearing as well as the Government's previous submissions in DE 80, admitted without objection, the Court finds as follows:[1] On

---

[1] At the hearing, the Government offered into evidence Exhibit 3, a video-recording of Det. Ford's interview with G.C. Mr. Young's counsel objected to the admission of this exhibit on the grounds that it was irrelevant to whether there was probable cause to search the car driven by Mr. Young on October 5, 2021. Mr. Young's counsel also argued that the exhibit was redundant because Mr. Young is not challenging G.C.'s consent. "Generally, the Federal Rules of Evidence do not apply strictly to suppression hearings," *United States v. Bailey*, 2021 U.S. Dist. LEXIS 137650, *11 (N.D. Ill. July 23, 2021) (citing *United States v. Watson*, 87 F.3d 927, 930 (7th Cir. 1996)). Even so, the Court admitted the exhibit conditionally until it could be reviewed in full. Having reviewed the video-recording, the Court finds that the exhibit should be admitted for considering Mr. Young's motion to suppress. The video-recording completes the factual narrative and explains how Det. Ford obtained G.C.'s consent

October 5, 2021, Hammond Police Department Detective Shawn Ford was surveilling Mr. Young in the parking lot of Nick's Liquor Store on Hohman Avenue in Hammond, Indiana. Mr. Young was meeting and conversing with multiple people and, from his experience in police work, Det. Ford suspected that Mr. Young was selling drugs. Det. Ford was investigating Mr. Young for criminal recklessness on suspicion of shooting up a house a month earlier. The police reports indicated that the shooter drove a Chevrolet Trax. During the surveillance, Mr. Young was in and near a 2020 Chevrolet Trax that Det. Ford believed was involved in the shooting. Having checked Mr. Young's driving record, Det. Ford knew that Mr. Young's driver's license was revoked in Illinois.

During the surveillance, Det. Ford was in an unmarked car and was not wearing a uniform. Indiana police aren't authorized to make vehicular stops when not wearing a uniform, so when Mr. Young drove away, Det. Ford radioed other officers in the area to make an investigatory stop of Mr. Young. Sgt. Gajewski, who was patrolling the area with Cpl. Simon Ciba, spotted Mr. Young in the Chevy Trax and attempted to stop him. Mr. Young slowed down but then sped away. Sgt. Gajewski and Cpl. Ciba started the pursuit but called it off due to safety concerns, as Mr. Young was traveling at a high rate of speed. Moments later, Cpl. Ciba saw Mr. Young crash his car into another vehicle. The crash occurred still in Hammond, on the Indiana side of State Line Avenue. The Chevy Trax continued, coming to a stop in Calumet City, on the Illinois side of the border.[2] As positioned, the car was blocking the sidewalk (Axon Body Cam 3

---

to search the car. Additionally, it's worth noting that, although Mr. Young is objecting to the video-recording, he is relying on parts of it when arguing that the officers conducted a warrantless search of the car. (*See* DE 60 at 13.) Accordingly, the Court overrules Mr. Young's objection to admitting Exhibit 3 into evidence.

[2] Hammond is located in Indiana and borders Calumet City located in Illinois.

8:51–55) and intruding into a residential driveway (*id.* 10:44–50; 14:26–29; 15:29–36). Mr. Young got out of the car and fled on foot, abandoning the wrecked car. (*Id.* 12:00–25.)

The two officers drove to the scene of the crash to attend to the driver of the other car and to secure the scene. The driver sustained some injuries and an ambulance was called in. (*Id.* 2:30–45; 6:30–40.) Cpl. Ciba stayed with the crashed Chevrolet Trax until it was towed to the Hammond Police Department. Cpl. Ciba looked through the windshield into the car to make sure no one was inside.[3] No one was in the car, and Cpl. Ciba did not see any drugs or weapons. The car's engine was on and the windshield wipers kept going, but Cpl. Siba testified that the vehicle was not drivable due to the extensive front end damage, deployed airbags, flat tires, and leaking antifreeze.

Cpl. Ciba spoke with a superior officer over the radio (he couldn't recall whether it was Det. Ford or someone else) who told him that a search warrant would be obtained for the vehicle.[4] Around this time, emergency responders walked to the car and one of them opened the door and reached inside to shut off the ignition. (*Id.* 19:20–20:00.) Cpl. Siba told him that the officers would be getting a search warrant, so they should not be touching anything in the car. Cpl. Ciba relayed the same information to a tow truck driver and told him not to go inside the car. (*Id.* 40:00–35.) Cpl. Siba testified that, besides the emergency responder shutting off the ignition, no one entered the vehicle. He said he was sure about that because he remained close to the car the entire time and would have seen or heard if someone was trying to get in.

---

[3] Cpl. Ciba's bodycam video-recording also shows two other officers, at a different time, shining their flashlights and looking inside the car through the windshield. (*Id.* 23:10–30.)

[4] Det. Ford testified that he believed there could be a gun (evidence of Mr. Young's involvement in the alleged shooting earlier) or drugs located in the car.

While Cpl. Ciba was still at the scene of the crash, other officers located and arrested Mr. Young about a mile away (*id.* 15:30–16:20) and turned him over to the Calumet City police officers who had a warrant for his arrest (*id.* 17:40–18:30). Mr. Young was hiding in someone's backyard. (*Id.* 34:45–35:11.)

Hammond Police towed the car to the Hammond Police Department garage. Sgt. Fran Eggers, an evidence technician, testified that he followed the tow truck all the way from the scene of the accident to the garage. Sgt. Eggers did not search the car at the scene. The car was owned and registered to G.C., Mr. Young's then-girlfriend. Despite counsel's representation at the hearing, there is no evidence to indicate that she responded to the OnStar alert. Det. Ford interviewed G.C. the next day and she consented to the search of the car. Sgt. Eggers searched the car in the police garage with Det. Ford present. He found two cell phones, twenty-two baggies of marijuana, two baggies of cocaine, two license plates, a wallet belonging to someone else, and a Taurus 357 revolver with an obliterated serial number. All items were in the passenger compartment and were readily accessible, including the gun, which was in the center console covered by a napkin.

Almost two months later, Det. Ford interviewed Mr. Young who admitted that he purchased the gun on the streets for $300 and knew that the serial number was obliterated. Mr. Young claimed that marijuana in the car was for his own use.

**B. Discussion**

Mr. Young is requesting that the firearm found in the Chevrolet Trax be suppressed because it was recovered as a result of an unconstitutional search. Mr. Young is also seeking to suppress his confession to Det. Ford, arguing that no substantial evidence corroborates it.

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Therefore, warrantless searches are prohibited unless the search falls under one of the recognized exceptions to the warrant requirement. *United States v. Denney*, 771 F.2d 318, 320 (7th Cir. 1985). If a warrantless search is conducted, the Government bears the burden to prove that an exception to the warrant requirement existed at the time of the search, or it will be considered unreasonable and unconstitutional. *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001). As for confessions, they must be accompanied by "substantial independent evidence which would tend to establish the trustworthiness of the statement." *Opper v. United States*, 348 U.S. 84, 93 (1954).

### (1) *Standing*

In its supplemental brief, the Government argues that Mr. Young lacks standing to challenge the search of the car he drove because he abandoned it while being pursued by police. In reply, Mr. Young insists that the Government forfeited this argument because it was not part of its initial response to his motion to suppress. In the alternative, Mr. Young submits that, as a Black person, he had a justified fear of police and his flight from the car cannot be construed as abandonment.

The Government has not forfeited its standing argument. Although by failing to argue an issue the Government may forfeit or waive it, the Court has not yet ruled on Mr. Young's motion to suppress. That's an important distinction from the cases on which Mr. Young relies. For example, Mr. Young looks to *Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014), which recognized that "[t]he non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment." In *Nichols*, the

defendant argued that the plaintiff waived the arguments he was making on appeal because he failed to raise them at the trial level. The court of appeals considered that challenge, ultimately finding no waiver. But the procedural posture of Mr. Young's case is different from the procedural posture of *Nichols*. The Government is raising its standing argument before any ruling is issued on Mr. Young's motion to suppress rather than arguing its point for the first time on appeal as happened in *Nichols*.

The other case on which Mr. Young relies is *United States v. Diggs*, 2020 U.S. Dist. LEXIS 5853, *3 (N.D. Ill. Jan. 14, 2020), where the court, in ruling on the government's motion to reconsider, found that the government had forfeited an argument by failing to adequately respond to the defendant's brief. But there, too, the court had issued an opinion while here the matter is still under consideration, making *Diggs* distinguishable. *See also United States v. Torres*, 32 F.3d 225, 229 (7th Cir. 1994) (the court of appeals considering the standing argument where the defendant contended "that the government waived the issue of standing by failing to raise the issue *prior to the court's order* suppressing the evidence" (emphasis added)). Mr. Young has identified no case of the government forfeiting its argument where it was presented before the matter was decided. Consequently, the Court will consider the merits of the Government's argument that Mr. Young lacks standing to challenge the search of the car he was driving.

The Fourth Amendment to the United States Constitution "protects a defendant from unreasonable searches in places where the defendant has a legitimate expectation of privacy." *United States v. Edwards*, 34 F.4th 570, 583 (7th Cir. 2022). "The Amendment does not apply to abandoned property." *Id.* "No person can have a reasonable expectation of privacy in an item that he has abandoned." *Id.* (cleaned up, citation omitted). "Abandonment turns upon an

objective test of 'the external manifestations of the defendant's intent as judged by a reasonable person possessing the same knowledge available to the government agents involved in the search.'" *Id*. (quoting *United States v. Pitts*, 322 F.3d 449, 455–56 (7th Cir. 2003)). As the court noted in *Edwards*, the Seventh Circuit has "stated on multiple occasions that a driver relinquishes any privacy interest when he flees a vehicle." *Id*. (citing *United States v. Vasquez*, 635 F.3d 889, 894 (7th Cir. 2011) (questioning how a defendant "could argue with a straight face that he maintained an expectation of privacy in [the vehicle] after he ditched it and bolted off on the run"); and *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005) (noting that when a driver flees from police, that "is pretty good evidence that he's abandoned the car—that he doesn't want to be associated with it and therefore isn't going to reclaim it") (parentheticals in the original)). The Government bears the burden to demonstrate abandonment by a preponderance of the evidence. *See United States v. Pitts*, 322 F.3d 449, 456 (7th Cir. 2003) ("To demonstrate abandonment, the government must prove by a preponderance of the evidence that the defendant's voluntary words or actions would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item to be searched.").

The Court finds that Mr. Young abandoned the car after the crash during his high speed flight from police. To begin with, his Illinois driver's license was revoked, and, by fleeing the police in a car, he was committing a felony offense in Indiana.[5] So, when Mr. Young bolted out

---

[5] Sec. 1. (a) A person who knowingly or intentionally:
. . .
    (3) flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop;
        commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (c) . . . .
. . .
(c) The offense under subsection (a) . . . is a:

of the car, which was not registered to him—with the engine still running and windshield wipers

on—and hid in the backyard of one of the homes about a mile away, any reasonable person

would conclude that, at this point, Mr. Young wanted nothing to do with the car.[6] Without an

expectation of privacy in the car, Mr. Young may not challenge under the Fourth Amendment

the search that followed. *See Edwards*, 34 F.4th at 583 ("Edwards ditched the Outlander (which

was not registered in his name) after a high-speed car chase the night of the O'Reilly Auto Parts

robbery when he fled on foot, and he was a fugitive at the time Detective Johnson entered the

vehicle. A reasonable person would conclude that Edwards abandoned the vehicle."); *Vasquez*,

635 F.3d at 894 (finding the search issue "a dead-bang loser" where the defendant abandoned the

car after speeding away when police attempted to arrest him and then running away from the

car); *United States v. Aron*, No. 1:19-CR-48-HAB, 2021 WL 1922968, at *3 (N.D. Ind. May 13,

2021) ("The Government contends, and rightly so, that the Defendant abandoned the vehicle

when he exited it and left it behind to avoid being apprehended by police. In his brief, the

Defendant does not contest the fact that after he crashed the vehicle, he fled from it, leaving the

keys in the ignition and the vehicle running.").

---

(1) Level 6 felony if:
    (A) the person uses a vehicle to commit the offense; or
    (B) while committing the offense, the person:
        . . .
        (iii) operates a vehicle in a manner that creates a substantial risk of bodily injury
        to another person;
Ind. Code § 35-44.1-3-1.

[6] It is a crime both in Indiana and Illinois to leave the scene of a vehicular accident without providing the information mandated by law or helping an injured party. *See Wadle v. State*, 151 N.E.3d 227, 253 (Ind. Ct. App. 2020) ("An 'operator of a motor vehicle' commits [the offense of leaving the scene of the accident], a Class B misdemeanor, when he or she 'knowingly or intentionally' leaves the scene of an accident without providing the necessary information and assistance." (quoting Ind. Code § 9-26-1-1.1(a), (b) (2015 Supp.)); *People v. Kraus*, 318 Ill. App. 3d 774, 789 (Ill. Ct. App. 2000) ("A defendant has committed the offense of leaving the scene of a personal injury accident if (1) the defendant was the driver of a vehicle involved in a motor vehicle accident, (2) the motor vehicle accident resulted in a death or personal injury, (3) the defendant knew an accident had occurred, and (4) the defendant failed to immediately stop his vehicle at the scene of the accident and remain at the scene of the accident until he had performed the duty to give information and render aid." (citing 625 ILCS 5/11-401(a) (1992)).

Although Mr. Young claims in his brief that he had a justifiable fear of police in running away from the car, no such evidence has been presented to the Court. Moreover, Mr. Young ignores the fact that abandonment is an objective inquiry. "This is an objective test and the defendant's subjective desire to later reclaim an item is irrelevant. We look solely to the external manifestations of the defendant's intent as judged by a reasonable person possessing the same knowledge available to the government agents involved in the search." *Pitts*, 322 F.3d at 456 (7th Cir. 2003). From the standpoint of a reasonable person in the position of the officers, Mr. Young was disassociating himself from the car in which he was fleeing the police (who knew he had a suspended driver's license). This disassociation is all the more true because Mr. Young was leaving the scene of an accident. Insofar as Mr. Young has not contested this evidence, there's more than a sufficient basis to find that he abandoned the car. Consequently, Mr. Young has no standing to challenge either the seizure or a warrantless search of the Chevrolet Trax, and that alone is sufficient grounds to deny his motion to suppress.

### (2) *Allegations of a Warrantless Search of the Car at the Crash Scene*

But even if Mr. Young had standing to challenge the search, his motion would still be denied. Mr. Young claims that the officers searched the car without a warrant shortly after he crashed it and no exception applies for such a warrantless search. According to Mr. Young, as a result, the subsequent search pursuant to G.C.'s consent was rendered illegal.[7]

---

[7] While Mr. Young does not identify his argument as such, he is essentially invoking the fruit of the poisonous tree doctrine. Under this doctrine, if there was an illegal search, the post-consent search would be tainted and the items recovered inadmissible, unless the Government could demonstrate that the evidence would have been discovered through an independent source. *See United States v. Conrad*, 673 F.3d 728, 732 (7th Cir. 2012) ("[U]nless one of various exceptions applies, exclusion will run not only to the unconstitutionally obtained evidence, but also to the fruits of that evidence—the so-called fruit of the poisonous tree."); *United States v. Swift*, 220 F.3d 502, 507 (7th Cir. 2000) ("The evidence may be purged of the taint by a finding that it was discovered by an independent source, that it would inevitably have been discovered without the unlawful [activity], or that its

Mr. Young's argument fails because there is no evidence that the Chevrolet Trax was searched by the police before G.C.'s consent.

> Inquiries under the Fourth Amendment generally proceed in two steps. The first asks whether a search occurred. The Supreme Court has developed two analytical approaches to this question, one based on an assessment of reasonable expectations of privacy and the other centered on a property-based or trespass inquiry. If indeed a search occurred, we evaluate its constitutionality under the Fourth Amendment's reasonableness requirement.

*United States v. Miller*, 68 F.4th 1065, 1068 (7th Cir. 2023). Here, there could not have been a search in the constitutional sense because there is no evidence to support that there was a search in the conventional sense. Sgt. Gajewski and Cpl. Ciba were the first officers to arrive at the scene of the crash, and Cpl. Ciba stayed with the Chevrolet Trax until it was towed. He testified that he was close enough to the car the entire time that he would have heard or seen if someone was trying to get inside. However, apart from the one emergency responder who turned off the ignition, no one entered the car. In fact, Cpl. Ciba told the emergency responder to not touch anything in the car because a search warrant was forthcoming and told the tow truck driver to not enter the car at all. Likewise, Sgt. Eggers, the evidence technician, testified that he did not search the car at the scene of the crash but followed the tow truck to the police garage to ensure that the car was not tampered with. He said he searched the car only after receiving G.C.'s consent.

Mr. Young has presented no evidence to the contrary. Instead, he reverts to the argument made in his original brief in support of the motion to suppress, namely, that Det. Ford expressed certainty to G.C. about the presence of the gun in the car which demonstrates that the car was searched before her consent. But the Court does not find Det. Ford's statement to G.C. as indicating that he already knew what was in the car. This is especially true when the entirety of

---

discovery is sufficiently distant in causal connection from the illegal [activity] so as to attenuate the connection between the two.").

the interview is considered and in light of the unequivocal and credible testimony at the evidentiary hearing that no one searched the car before G.C.'s consent. Det. Ford told G.C. that he was investigating Mr. Young for allegations of a drive-by shooting of a house. Mr. Young was named as a suspect and there were allegations that he was driving a Chevrolet Trax. Det. Ford said he was watching Mr. Young in the liquor store parking lot before the incident and suspected him of dealing marijuana. Det. Ford told G.C. that he was seeking her consent to search the car but went out of his way to underscore that G.C. was not under investigation and was not suspected of having contraband in the car. His statement about the items in the car appears to be conditional, that is, based on what may be found, not that the items had already been found:

> So the other thing that we have to eliminate too is whether or not there is a gun in that car or not, because I'm going to say that you are not ok with him driving up and down Hohman and selling marijuana out of your car, correct? Ok. So there's going to be some stuff in your car and I mean, it's registered to you . . . as far as you know, there's nothing illegal in your car? Ok. You don't keep any drugs in there? Any drugs that we found wouldn't be yours? Any alcohol containers or anything like that? No firearms would be yours?

(G.C. Interview Rec. 31:20–33:42.) While Det. Ford did indicate to G.C. that he knew there was a cell phone in the car because "the officer relayed to me that they saw it" (*id.*), the Court cannot find from this statement alone that the officers searched the car before it was towed. Although Det. Ford testified at the evidentiary hearing, Mr. Young's counsel did not cross-examine him on this point and this statement, which can be construed as an observation made in plain view, is not enough to override the sworn testimony of the officers who were at the scene. While the Government bears the burden to show that a warrantless search was reasonable, Mr. Young must show that there was a search to begin with. Without any evidence that the car was searched before G.C.'s consent, Mr. Young has failed his burden of proof. *See United States v. Steele*, 782

F. Supp. 1301, 1306 (S.D. Ind. Jan 28, 1992) ("A typical motion to suppress evidence based upon an unlawful seizure involves a shifting burden; the defendant bears the burden of proving there was a seizure and then the burden shifts to the government to prove the seizure was justified (reasonable)."); *cf. United States v. Sawyer*, 929 F.3d 497, 499 (7th Cir. 2019) ("The defendant] bears the burden of showing that he had a legitimate expectation of privacy."). As such, the Court need not determine whether there was probable cause to support a warrantless search of the vehicle.

### (3) *Seizure of the Car*

Mr. Young's motion to suppress must be further denied because G.C. consented to the search of the Chevrolet Trax, the car that she owned and was registered to her. Mr. Young does not challenge the validity of G.C.'s consent, but argues that the consensual search was illegal because the Hammond police officers did not have the authority to impound the car. Mr. Young is mistaken.

"An impoundment must either be supported by probable cause, or be consistent with the police role as 'caretaker' of the streets and completely unrelated to an ongoing criminal investigation." *United States v. Duguay*, 93 F.3d 346, 352 (7th Cir. 1996). Here, the impoundment was supported by probable cause of Mr. Young committing the hit-and-run offense, *see supra* n.6.[8] This principle is illustrated in *Martinez v. Lafayette Police Department*, No. 4:13-CV-12 WL, 2013 WL 1856804, at *3 (N.D. Ind. May 1, 2013). In that case, the plaintiff sued two police officers claiming that they violated his Fourth Amendment rights when

---

[8] Although the parties do not address this legal theory, the facts of the case fall squarely within its realm, giving the Court the reason to address it *sua sponte*.

they arrested him and seized his truck after he was accused of being involved in a hit-and-run accident. In his lawsuit, the plaintiff complained among other things about his truck being impounded without a warrant, but the court dismissed this cause of action finding that the seizure was proper given that the truck took part in the hit-and-run accident, the officers had proper access to the truck, and the truck was in plain view. *Id.* (citing *Soldal v. Cook County*, 506 U.S. 56, 70 (1992); *Florida v. White*, 526 U.S. 559 (1999); and *United States v. Brown*, 79 F.3d 1499, 1508 (7th Cir. 1996)). And so it is here: the Hammond officers saw the hit-and-run accident themselves and reported it to the Calumet City officers; furthermore, the car involved, the Chevrolet Trax, was in a public area, easily accessible to the police. As a result, the officers had probable cause to seize the vehicle and there was no impediment for such a seizure. Moreover, it's inconsequential if the officers intended to search the vehicle as attendant to the hit and run offense, as opposed to some other purpose, because "it does not matter what offense the arresting officer cited at the time of arrest" as the inquiry is objective, not subjective. *See United States v. Norville*, 43 F.4th 680, 682 (7th Cir. 2022) (quoting *Ramos v. City of Chicago*, 716 F.3d 1013, 1018 (7th Cir. 2013) ("[W]e have repeatedly held that the offense for which probable cause exists need not be the subjective offense for which the officer was conducting the arrest.")). Mr. Young's conduct in fleeing the scene of an accident presents legitimate grounds for legally impounding the Chevrolet Trax, further undermining his motion to suppress.

### (4) *Inevitable Discovery*

But even if the Hammond officers had no right to impound the Chevrolet Trax pursuant to probable cause, the gun need not be suppressed because it would have been inevitably discovered.

13

"The doctrine of inevitable discovery provides that illegally obtained evidence will not be excluded if the Government can prove, by a preponderance of the evidence, that the officers 'ultimately or inevitably would have . . . discovered [the challenged evidence] by lawful means.'" *United States v. Marrocco*, 578 F.3d 627, 637 (7th Cir. 2009) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). "To satisfy this burden, the Government must demonstrate that two criteria are met: First, it must show that it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence; second, the Government must demonstrate that it would have conducted a lawful search absent the challenged conduct." *Id*.

The Government submits that it has satisfied both of these criteria. It first asserts that the Hammond officers would have inevitably obtained G.C.'s consent to search the car or they would have secured a search warrant. Second, the Government submits that, even if the car should not have been towed to Hammond, both the gun and the drugs would have been discovered in any case because the car would have been impounded by the Calumet City Police Department and inventoried there. Mr. Young answers the latter contention with a claim that the car could not have been impounded by the Calumet City Police Department because, under the Department's policy, the officers were obliged to give G.C. the opportunity to tow the car first. While the Government's first argument is without merit, the evidence does demonstrate that the car would have been lawfully impounded by the Calumet City Police Department where it would have been inventoried pursuant to its policies resulting in the discovery of the contraband.

"Both the decision to take the car into custody and the concomitant inventory search must meet the strictures of the Fourth Amendment." *Id.* at 630 (quoting *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996)). "The decision to impound an automobile, unless it is supported

by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide

for the speedy and efficient removal of the car from public thoroughfares or parking lots." This is

known as the "community caretaking" function, which allows police officers to impound

vehicles that "imped[e] traffic or threaten[ ] public safety and convenience." *South Dakota v.*

*Opperman*, 428 U.S. 364, 368–69 (1976); *see also United States v. Cherry*, 436 F.3d 769, 774

(7th Cir. 2006) (holding that police could tow the arrestee's "hazardously parked car pursuant to

their standard policy, in furtherance of their 'community caretaking' function"). *Duguay*, 93 F.3d

at 353.

     "'Standardized criteria or established routine must regulate' inventory searches. Among

those criteria which must be standardized are the circumstances in which a car may be

impounded." *United States v. Duguay*, 93 F.3d at 351 (citing *Florida v. Wells*, 495 U.S. 1, 4

(1990) (suppressing evidence because the Florida Highway Patrol did not have a policy for

opening containers within a seized car)). Standardized policies safeguard against pretextual

searches. *United States v. Cartwright*, 630 F.3d 610, 614–15 (7th Cir. 2010). However, "[t]he

existence of a police policy, city ordinance, or state law alone does not render a particular search

or seizure reasonable or otherwise immune from scrutiny under the Fourth Amendment." *Id.*

(citing *Sibron v. New York*, 392 U.S. 40, 61 (1968) ("The question in this Court upon review of a

state-approved search or seizure is not whether the search (or seizure) was authorized by state

law. The question is rather whether the search was reasonable under the Fourth Amendment.")).

Inventory searches are allowed "to protect an owner's property while it is in the custody of the

police, to insure against claims of lost, stolen, or vandalized property, and to guard the police

from danger." *Duguay*, 93 F.3d at 352 (internal citation and quotation marks omitted); *see also*

*Cherry*, 436 F.3d at 772.

The Government's argument for inevitable discovery is twofold.[9] First, it acknowledges that the Hammond Police Department has no written inventory policy,[10] but it suggests that Det. Ford would have "obtained consent to search the vehicle or obtained a warrant based on the facts of [Mr.] Young's observed hand to hand transaction, his resisting law enforcement, the car crash and subsequent abandonment of the vehicle." (Gov't Resp. Br., DE 80 at 10.) This is not what inevitable discovery is. There's no evidence—nor could there be—that, even if the car had not been impounded, everything else would have remained the same. There's no telling whether the car would have still been available for the search, whether the gun and other contraband would have still been in the car, and no one knows whether G.C. would have actually consented to its search. That it happened in this case is not proof that it would have happened inevitably. The same is true of obtaining and executing a search warrant. Moreover, "whether authorities would in fact have conducted a lawful search is a question distinct from whether they would have had probable cause to do so; that is, probable cause to search does not alone render discovery of the evidence in question inevitable." *United States v. Jones*, 72 F.3d 1324, 1330 n.8 (7th Cir. 1995). In any case, the Government's argument is grounded in the assumption that the police had possession of the car, but it has not explained why they were entitled to seize the car.

However, the Government's second argument has merit. The Government maintains that, if Hammond police didn't take the car, it would have been impounded by the Calumet City Police Department where it would have been inventoried and the gun and drugs, readily discoverable given their location in the vehicle, would have been inevitably found. Calumet

---

[9] To be sure, this discussion is relevant only if the Hammond Police Department had no right to impound the car Mr. Young was driving.

[10] The Government seems to suggest that there's no inventory policy at all, written or unwritten, as it does not expound beyond that acknowledgment. Det. Ford testified that there's no policy and that officers were operating under a "general guideline" of what's expected when a car is impounded.

City's ordinance authorizes impounding a vehicle driven by a person "on a suspended or revoked driver's license." (Policy 503.3, DE 80-4 at 4.) Since Mr. Young's driver's license was suspended, he fell squarely within the scope of this ordinance. In addition, the ordinance provides for towing whenever the operator of a car is arrested:

> Whenever the owner or operator of a vehicle is arrested, the arresting officer may provide reasonable safekeeping by leaving the vehicle secured and lawfully parked at the scene or, when appropriate, by having the vehicle towed, such as when the vehicle presents a traffic hazard or the vehicle would be in jeopardy of theft or damage if left at the scene.

> Officers are not required to investigate whether alternatives to towing a vehicle exist after an arrest. However, a vehicle should not be towed if reasonable alternatives exist. When considering whether to leave a vehicle at the scene, officers should take into consideration public safety as well as the reasonable safety of the vehicle and its contents.

(Policy 502.4, DE 80-5 at 1.) These are reasonable conditions for towing that have been cited with approval by the Seventh Circuit, *see Cartwright*, 630 F.3d 610, 614–15, and because Mr. Young was both driving with a revoked license and arrested pursuant to a Calumet City arrest warrant, the impoundment would have been justified. *See id*. ("As is pertinent here, the IMPD policy permits the impoundment of vehicles 'operated by a non-licensed or suspended driver' or 'by [a] person under custodial arrest for any charge.' Because [the passenger] was unlicensed and [the driver] under arrest, the policy permitted impoundment in the present case."). In addition, the Calumet City Police Department has a vehicle inventory policy that has detailed directives on how an impounded car should be inventoried. Importantly, the policy prohibits pretextual towing: "[t]owing a vehicle in order to perform an inventory should not be used as a pretext for an evidence search." (Policy 502.8, DE 80-5 at 4.) The Policy is sufficiently standardized to provide clear guidance to the officers. Moreover, while the policy contemplates

some exceptions to towing cars,[11] none of them apply to Mr. Young. The Chevrolet Trax had

sustained significant damage, as already explained, and the driver's airbag was deployed (Gov't

Exh. B, DE 63, Body Cam. Rec. 5:05–25). In addition, the car was blocking a sidewalk and the

driveway of one of the homes on the street where the accident took place (*id.* 4:33–48), thus

posing a hazard. The impoundment policy provides that "Officers are not required to investigate

whether alternatives to towing a vehicle exist after an arrest," but should not tow a vehicle "if

reasonable alternatives exist." (Policy 502.4, DE 80-5 at 1.) There is no evidence that there were

reasonable alternatives to towing the car and that anyone was available to take the car. Mr.

Young's counsel suggested at the hearing that G.C. was informed by OnStar of the car crash and

came to the scene of the crash once everyone was gone, but there's no evidence that this actually

happened. G.C. did not testify at the hearing and the lawyer's statements aren't evidence. *Cf. Ho

v. Donovan*, 569 F.3d 677, 682 (7th Cir. 2009) ("Assertions in an appellate brief are no substitute

for evidence.")

      Mr. Young insists that the Calumet City police officers could not have towed the car

without first giving G.C. an opportunity to remove it. But Calumet City's policy makes no such

requirement when an impoundment is contemporaneous with an arrest of the driver. Instead Mr.

Young draws this requirement from a different section of the policy: *removal of vehicles due to*

---

[11] The following are examples of situations where a vehicle should not be towed:
• The vehicle can be legally parked, left in a reasonably secure and safe location and is not needed as evidence.
• The vehicle is parked on private property, on which the arrestee or owner is legally residing, or the property owner does not object to the vehicle being parked at that location.
• The arrestee or owner of the vehicle requests that it be released to a person who is present, willing and able to legally take control of the vehicle.
• The vehicle is legally parked and the arrestee or owner requests that it be left at the scene. In such cases the requester should be informed that the Department will not be responsible for theft or damages.

(Policy 502.4, DE 80-5 at 1–2.)

*hazard*. (Policy 502.4, DE 80-5 at 1 (emphasis added).) That section does require that "[w]hen a vehicle should be towed because it presents a hazard, the owner or operator should arrange for the towing." (*Id*.) It further provides that the vehicle can be towed "[i]f the owner or operator is unable to arrange for towing and the vehicle presents a hazard." (*Id*.) But this section is not controlling because the Chevrolet Trax would have been towed to the Calumet City Police Department under the previously discussed provisions (*arrest scenes* and *driver with revoked license*), not merely because it constituted a hazard. Mr. Young has not identified any provision in those sections that would have required the officers to contact G.C. before impounding the car. Here, the decision by the Calumet City Police Department to impound the car would have been valid because Mr. Young was unable "to provide for the speedy and efficient removal of the car," *Duguay*, 93 F.3d at 353, from the sidewalk and the driveway of a private citizen. He was the sole driver of the car, and no one else was available to take custody of the car. *See e.g.*, *United States v. Wilson*, 938 F.2d 785 (7th Cir. 1991) (solo driver arrested).

Finally, Mr. Young's case in no way resembles *Duguay* on which he relies. In *Duguay*, the officers impounded the defendant's car "despite that [his girlfriend] had driven the car, had possession of the keys, and was prepared to remove the car from the street." *Id.* 93 F.3d at 353. Moreover, the defendant's brother who was the son of the car's title holder was also present at the time of the arrest. *Id.* Under those circumstances, the officers could not claim a "caretaking" function, but as explained above, in Mr. Young's situation, impounding the car by the Calumet City Police would have squarely fit the exception for warrantless seizures because no other person was available to take possession of the car.

For these reasons, the Court finds that, had the vehicle not been taken by the Hammond police, it would have still been impounded by the Calumet City Police Department where the

drugs and gun would have been easily discovered as part of the inventory. Sgt. Eggers testified

that the drugs and the gun were in the main compartment of the car and were easily discoverable.

The drugs were strewn throughout the front passenger area and the gun was in the middle

console covered by only a napkin. Therefore, it's not a speculation to find that the contraband

would have been inevitably discovered by lawful means. *See United States v. Stotler*, 591 F.3d

935, 940 (7th Cir. 2010) ("The inevitable discovery doctrine holds that even an illegally seized

item need not be suppressed if the government can prove by a preponderance of the evidence that

the officers would have discovered it by lawful means. If the police had not searched [the

defendant's] pickup when they did, the evidence would have undoubtedly been discovered a

little later. Obviously, with [the defendant] in custody, he was not going to be allowed to get in

his truck and drive away. Also obviously, the arresting officers would not have allowed the truck

to just sit on the street after [the defendant] was carted away. What they would have done, in all

likelihood, was impound the truck and have it towed away. An inventory search would have

naturally followed; the evidence would have been inevitably discovered.") (citations omitted);

*see also Cartwright*, 630 F.3d at 616 ("In determining whether the inevitable discovery doctrine

applies, the court considers a hypothetical situation.").


**(5)  *Mr. Young's Statements***

Next, Mr. Young is requesting that the Court suppress his statements made during the

interview with Det. Ford. He argues that there is no evidence independent of his confession to

show that he possessed a firearm as a felon. He argues that no one saw Mr. Young "exercise

direct control over the firearm," "nobody witnessed [him] hold the gun, nobody witnessed [him]

load the gun, nobody witnessed [him] shoot the gun, and most importantly, the government has

not presented any evidence that [his] fingerprints were found on the gun." (Def.'s Mot. Suppress, DE 60 at 9.) Mr. Young further argues that the car was not his and suggests that his flight from the car after the crash establishes that he did not exercise the requisite control over the gun.[12]

But because the firearm will not be suppressed, there's more than an uncorroborated confession that favors the Government's case. In fact, there's substantial independent evidence that Mr. Young possessed a firearm after being convicted of a felony. To proceed to trial, the Government need not have the actual proof that Mr. Young committed a crime, even if his confession is discounted; instead, "there must be '*substantial* independent evidence which would tend to establish the trustworthiness of the statement." *United States v. Kerley*, 838 F.2d 932, 940 (7th Cir. 1988) (emphasis added).

Here, such substantial independent evidence is readily available. To be guilty of possession of a firearm Mr. Young did not have to physically hold, load, or shoot the gun as he suggests. Nor are the fingerprints dispositive to whether he possessed it. It's sufficient that he would have had constructive possession of the gun, that is, that he knowingly had the power and the intention at a given time to exercise dominion and control over the gun. *See Henderson v. United States*, 575 U.S. 622, 626 (2015) ("By its terms, § 922(g) does not prohibit a felon from owning firearms. Rather, it interferes with a single incident of ownership—one of the proverbial sticks in the bundle of property rights—by preventing the felon from knowingly possessing his (or another person's) guns. But that stick is a thick one, encompassing what the criminal law recognizes as "actual" and "constructive" possession alike . . . Constructive possession is

---

[12] In making his argument, Mr. Young invokes the common law "corpus delicti" rule, even as he recognizes that "federal courts do not apply the traditional rule. Rather, 'Corroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti' . . . the government may instead introduce 'substantial independent evidence which would tend to establish the trustworthiness of the statement." (Def.'s Mot. Suppress, DE 60 at 8 (quoting *United States v. Sterling*, 555 F.3d 452, 456 (7th Cir. 2009)).

21

established when a person, though lacking such physical custody, still has the power and intent to exercise control over the object. . . . Section 922(g) thus prevents a felon not only from holding his firearms himself but also from maintaining control over those guns in the hands of others."); *see also United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir. 1990).

Constructive possession may be proved by either direct or circumstantial evidence. *Garrett*, 903 F.2d at 1110. Construction possession can be established by demonstrating that a person exercised dominion and control over the premises where the object in question was found. *See United States v. Taylor*, 728 F.2d 864, 870 (7th Cir. 1984) ("In order to establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the premises . . . in which the contraband is concealed.") (quoting *United States v. Alverson*, 666 F.2d 341, 345 (9th Cir. 1982)). Here, aside from Mr. Young's confession, substantial evidence shows that he constructively possessed the firearm as he was the driver and the sole occupant of the car where the gun was found following his crash. The gun was near the gear shifter, easily within the reach of the driver, even though it was covered with a napkin when officers retrieved it. And G.C. stated to Det. Ford that any gun in the car would not have belonged to her.

**C.  Conclusion**

For these reasons, the Court DENIES Mr. Young's motion to suppress (DE 60).

SO ORDERED.

ENTERED: May 30, 2024

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court